IN THE COUNTY COURT OF THE TENTH JUDICIAL CIRCUIT
IN AND FOR POLK COUNTY, FLORIDA
SMALL CLAIMS DIVISION

| | |
|---|---|
| Amy Robinson,<br><br>*Plaintiff*,<br><br>v.<br><br>**Jefferson Capital Systems, LLC,**<br><br>*Defendant*. | Case No:<br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW** the Plaintiff, **Amy Robinson** ("Ms. Robinson"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendant, **Jefferson Capital Systems, LLC** ("**Jefferson**"), stating as follows:

### PRELIMINARY STATEMENT

1. This is an action for damages not exceeding $8,000, brought by Ms. Robinson against Jefferson for violations of the Florida *Civil Remedies for Criminal Practices Act*, Florida Statutes § 772.101, *et seq.* ("**CRCPA**"), the *Florida Consumer Collection Practices Act*, Florida Statutes § 559.55, *et seq.* ("**FCCPA**"), and the *Fair Debt Collection Practices Act*, 15 U.S.C. § 1692, *et seq.* ("**FDCPA**").

### JURISDICTION AND VENUE

2. Jurisdiction arises under the FDCPA, 15 U.S.C. § 1692k(d), the CRCPA, Florida Statutes § 772.104, the FCCPA, Florida Statutes § 559.77(1), and Florida Statutes § 34.01.

3. Jefferson is subject to the provisions of the CRCPA, the FDCPA, and the FCCPA, and to the jurisdiction of this Court pursuant to Florida Statutes § 48.193.

4. Pursuant to Florida Statutes § 47.051, venue is proper in Polk County, Florida, because the acts complained of were committed and / or caused by Jefferson within Polk County.

## PARTIES

### Ms. Robinson

5. **Ms. Robinson** is a natural person who at all times relevant has resided in the City of Lakeland, Polk County, Florida.

6. Ms. Robinson is a *Consumer* as defined by the FDCPA, 15 U.S.C. § 1692a(3), and the FCCPA, Florida Statutes § 559.55(8).

### Jefferson

7. **Jefferson** is a Georgia limited liability company, with a principal business address of **16 McLeland Rd., St. Cloud, MN 56303**.

8. Jefferson is registered to conduct business in the State of Florida, where its registered agent is **Corporation Service Company, 1201 Hays St., Tallahassee, FL 32301**.

9. Jefferson is a *Debt Collector* within the meaning of the FDCPA, 15 U.S.C. §1692a(6), and the FCCPA, Florida Statutes § 559.55(7), in that it uses an instrumentality of commerce, including the postal mail and / or telephone, interstate and within the State of Florida, for its business, the principal purpose of which is the collection of debts, and / or it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

10. Jefferson is registered with the Florida Office of Financial Regulation as a *Consumer Collection Agency* ("CCA"), holding license number **CCA9901497**.

11. As a licensed CCA, Jefferson knows or should know the requirements of the FDCPA and FCCPA.

## FACTUAL ALLEGATIONS

### Total Makes Illegal Loans to Ms. Robinson

12.  In or around March 2016, Ms. Robinson obtained an open-ended line of credit (the "**Total Account**" or "**Total Loan**") from Total, an online lender.

13.  The Total Loan had a stated credit limit of $300; however, the Total Loan also had a $75 "annual fee" which Ms. Robinson was required to pay, meaning that only $225 of credit was available to her.

14.  The Total Loan also had a $95 "program" fee, along with a "monthly servicing" fee of $8.25 per month, which Ms. Robinson was required to pay as well.

15.  Ms. Robinson thereafter allegedly became indebted on her Total Account in the amount of $470.36 for credit card charges made for various consumer goods and services.

16.  The Total Account arose from transactions which were primarily for family, personal, or household purposes, specifically charges for consumer goods and services, and therefore the Debt meets the definitions of *Debt* under the FDCPA, 15 U.S.C. § 1692a(5), and the FCCPA, Florida Statutes § 559.55(6).

17.  Florida Statutes § 687.071(2) renders any extension of credit made at annual interest rates between 25% and 45% a second-degree misdemeanor.

18.  Florida Statutes § 687.071(7) indicates any such extension of credit, and logically any debt stemming from such extension of credit, is void and unenforceable.

19.  The *stated* annual interest rate on the Total Loan exceeded 34.9% annually.

20.  In reality, the annual interest rate was much higher – in the triple digits.

21.  The $170, or more, in fees which Ms. Robinson was required to pay to obtain the $300 line of credit is considered interest under Florida law. *See* Fla. Stat. 687.03 – interest is

computed including fees for "any contract, contrivance, or device whatever whereby the debtor is required or obligated to pay a sum of money greater than the actual principal sum received."

22. The principal sum received was a maximum of $300, for which Ms. Robinson had to pay $470, which is an 89.5% annual interest rate.

23. When adding the *additional* 34.99% annual rate assessed by Total, the combined effective APR is **124.49%.**

24. The Total Loan is thus void *ab initio. See Stubblefield v. Dunlap*, 148 Fla. 401, 4 So.2d 519 (1941); *Pushee v. Johnson*, 123 Fla. 305, 166 So. 847 (1936); *River Hills, Inc. v. Edwards*, 190 So.2d 415 (Fla. 2d DCA 1966). *Richter Jewelry Co. v. Schweinert*, 169 So. 750, 758-59 (Fla. 1935) (criminally usurious loans are "void as against the public policy of the state as established by its Legislature.")

25. The Total Loan is therefore an *unlawful debt* per Florida Statutes § 772.102(2).

26. Florida law prohibits any recovery of the principal on such extensions of credit. *Rollins v. Odom*, 519 So. 2d 652, 656 (Fla. Dist. Ct. App. 1988).

27. <u>Any</u> amount repaid on an illegal, usurious debt deemed void *ab initio* by state law constitutes unjust enrichment, even if less than the original amount of the loan. *See, e.g., Williams et al. vs. Big Picture Loans, LLC*, case 3:17-cv-461, E.D. Virginia, July 20, 2021.

28. Ms. Robinson had made several payments on the Total Account, including interest and fees, between March 2016 and December 2016.

### Total Engages in Rent-a-Bank Scheme with TBOM

29. The Total® Visa Card is a registered trademark of Total Card, Inc. *See* https://www.totalcardvisa.com/?page=contact.

30. In December 2020, Total was sold to the California-based FinTech company Vervent; the card was renamed the Vervent Card.

31. Prior to this time, Total performed all substantial business functions involving Total Visa from its offices in Sioux City, South Dakota, and in other locations.

32. After the December 2020 sale, Vervent performed all substantial business functions in the same fashion.

33. Total, and later Vervent, provided consumer financing options to deep sub-prime consumers, at interest rates illegal in the vast majority of states, including Florida.

34. Total Visa Cards and Vervent Cards (the "**Cards**") were/are ostensibly issued by The Bank of Missouri ("**TBOM**"), a small state-chartered bank in Missouri whose consumer loan portfolio consists exclusively of credit products made via non-bank "partners."

35. The Cards carry interest rates of 34.99% annually and generally offer a $300 line of credit. **SEE PLAINTIFF'S EXHIBIT A.**

36. Total and Vervent, as non-bank entities, are subject to Florida's restrictions on interest rates; the highest lawful rate that they could charge in Florida would be 18% annually.

37. In an effort to avoid state usury laws, such as Florida's, Total and Vervent claim they have "partnered" with various small banks, as banks are not subject to foreign state interest rate limits pursuant to the National Bank Act.[1]

38. Such arrangements are referred to as "rent-a-bank" schemes.

39. On paper, Total and Vervent's extensions of credit and cardholder agreements claim their extensions of credit are made by TBOM and are serviced by Total or Vervent.

---

[1] 12 U.S.C. § 85. "Section 85 of the National Bank Act (NBA) allows federally chartered banks to 'export' the maximum interest rates of their "home" states, meaning they can charge those rates when lending to borrowers in other states with stricter usury laws." Congressional Research Service – See crsreports.congress.gov/product/pdf/LSB/LSB10512, visited on March 28, 2021.

40. However, as aforementioned, TBOM has virtually nothing to do with loans it makes utilizing Total and Vervent's trademarked names, other than to lend its name and status as a state-chartered bank to Total and Vervent, which are non-bank entities.

41. While TBOM makes secured loans or extensions of credit directly to consumers itself, TBOM offers no credit card products or other unsecured consumer loans directly.

42. Indeed, the vast majority of TBOM's consumer lending is through "partnership" agreements with non-bank lenders, similar to its agreements with Total and Vervent.

43. TBOM, as a bank, can export the maximum interest rate in its home state of Missouri to lend to borrowers in other states with stricter usury laws. *See* 12 U.S.C. § 85.

44. Total and Vervent thus launder their loans through TBOM, claiming that TBOM is the true lending entity.

45. However, TBOM was not the true lender of Ms. Robinson's Total Account.

46. Total and Vervent, as applicable, were the true lenders concerning Ms. Robinson's Total Account, as they have, or had, the predominant economic interest in extensions of credit made to consumers like Ms. Robinson. *See Fulford v. Marlette Funding, LLC,* No. 17CV30376 and *Fulford v. Avant of Colorado, LLC*, No. 17CV30377 (Colo. Dist. Ct. Denver County Aug. 13, 2018); see also, e.g., *State Bank v. Strong*, 651 F.3d 1241 (11th Cir. 2011); Easter v. Am. W. Fin., 381 F.3d 948, 957 (9th Cir. 2004); *CFPB v. CashCall, Inc.,* No. CV 15-7522-JFW (RAOx), 2016 WL 4820635 (C.D. Cal. Aug. 31, 2016); *Penn v. Think Fin., Inc.*, No. 14-cv-7139, 2016 WL 183289 (E.D. Pa. Jan. 14, 2016); *Goleta Nat'l Bank v. Lingerfelt*, 211 F. Supp. 2d 711 (E.D. N.C. 2002); *CashCall, Inc. v. Morrisey*, No. 12-1274, 2014 WL 2404300 (W. Va. May 30, 2014) (memorandum decision); *Ubaldi v. SLM Corp.*, 852 F. Supp. 2d 1190 (N.D. Cal. 2012); and *Eul v. Transworld Sys.*, No. 15 C 7755, 2017 WL 1178537 (N.D. Ill. Mar. 30, 2017).

47. TBOM stood to lose virtually nothing if a loan or extension of credit goes bad.

48. An examination of corporate records from the South Dakota Secretary of State shows Total owned several related companies, named Total Card Funding I LLC, Total Card Funding II LLC, and Total Card Funding III, LLC.

49. Upon information and belief, these entities, as their names clearly imply, provided capital utilized to make loans funded through Total Visa, and received payments, including usurious interest, therefrom.

50. TBOM stood to profit very little in the event a loan or extension of credit is paid in full at illegal annual interest rates, like the Total Account granted to Ms. Robinson.

51. TBOM collected a small, but guaranteed, fee for each loan or extension of credit originated as part of the rent-a-bank scheme with Total and Vervent, along with the payment of certain other fees which constitute the "rent."

52. Total and Vervent's partnerships with TBOM required them to purchase loans or extensions of credit like the ones made to Ms. Robinson almost immediately after origination – usually the same day.

53. Through a highly complex series of transactions involving multiple entities, including Total Card Funding I, LLC and Total Card Funding II, LLC, ownership of the credit card receivables is (or was, as applicable), assigned by TBOM to Total and Vervent, who then collect(ed) the loans – and the 34.9% interest assessed on them, in addition to other fees.

54. Total and Vervent also are required to ensure TBOM "can't lose" money on Total Card customers, and maintains a cash collateral account with TBOM, an alternative collateral account, and letters of credit which benefit TBOM.

55. Consumers who are looking to obtain financing via a Total Visa Card had to apply at www.totalcardvisa.com, a website owned and maintained by Total, and not through TBOM's own website.

56. Potential borrowers are screened based upon lending criteria developed and implemented by Total, not by TBOM.

57. Total, through one of its subsidiaries, also acted as the servicer for Total loans and extensions of credit.

58. Total reconciled the accounts, posted payments and other credits to the accounts, and provided periodic billing statements to consumers.

59. Monthly periodic statements were produced by Total and mailed or emailed to consumers with its South Dakota address as the correspondence address.

60. In a similar fashion, Total produced and mailed monthly periodic statements to Ms. Robinson concerning her Total Visa Card.

61. Total reported Ms. Robinson's account to several major ***Consumer Credit Reporting Agencies*** ("CRAs"), including Experian. **SEE PLAINTIFF'S EXHIBIT B.**

62. The account name reported to Experian was, "BK OF MISSOURI/TOTAL CARD"; however, the address provided is the principal address for Total. *Id.*

63. Total, and not TBOM, sold portfolios of charged-off consumer debt to third-party debt purchasers, and retained the funds for these purchases itself, receiving payment for the sale of those charged-off receivables.

### Jefferson Collects Illegal Debt from Ms. Robinson

64. Around December 2018, Total, or a successor-in-interest, sold or otherwise assigned the Total Account to Jefferson.

65. Jefferson knew, or should have known, that it was collecting an unlawful debt from Ms. Robinson.

66. Jefferson collects a large number of unlawful debts that derive from creditors such as Total, which it purchases at a tiny fraction of face value, and then attempts to collect the full value of such debts from consumers like Ms. Robinson.

67. Beyond this, Jefferson was in possession of the original account documents creating the Total Loan.

68. The 34.99% interest rate was printed in large, bold type on the account disclosure, as was the $75 annual fee required to obtain the $300 line of credit.

69. Jefferson then took steps to collect the Total Loan from Ms. Robinson, including sending collection letters, including one dated February 18, 2022 (the "**Letter**"). **SEE PLAINTIFF'S EXHIBIT C.**

70. The Letter stated a balance owed of $470.36 and that it was an attempt to collect a debt. *Id.*

71. The collection letter sent by Jefferson offered to resolve the usurious debt for a 45% savings by paying $86.23 for three months. *Id.*

72. The collection letter also provided Ms. Robinson a deadline of March 24, 2022, to take advantage of the discounted offer.

73. The Letter was thus in connection with the collection of a debt.

74. While Jefferson will accept the offer past March 24, 2022, it created a sense of urgency and obligation for Ms. Robinson to resolve the Total Loan, albeit an illegal one.

75. Jefferson's Letter was thus misleading and deceptive, since Jefferson placed an expiration date on an offer which it had no intention of enforcing.

76. Jefferson's "expiration dates" are nothing more than a tool to convince the unsophisticated consumer that payment of the debt is time sensitive in order to induce payment.

77. Jefferson's use of false deadlines to induce prompt payment on an illegal loan has caused Ms. Robinson to suffer emotional distress.

78. Ms. Robinson has hired the aforementioned law firm to represent her in this matter and has assigned her right to fees and costs to such firm.

## COUNT I
### VIOLATIONS OF THE CRCPA, Florida Statutes § 772.103(4)

79. Ms. Robinson adopts and incorporates paragraphs 1 – 78 as if fully stated herein.

80. Jefferson violated **Florida Statutes § 772.103(4)** when it conspired with Total, and other persons, natural and otherwise, to collect an unlawful debt – Ms. Robinson's Total Loan – and to use any funds collected in furtherance of Jefferson's ongoing collection enterprise.

81. Jefferson took numerous actions in furtherance of this conspiracy, including the collection of Ms. Robinson's Total Loan, sending collection letters, and making payment demands over the phone.

**WHEREFORE,** Ms. Robinson respectfully requests this Honorable Court enter judgment against Jefferson, ordering:

  a. Threefold the amount of actual damages, or, in the alternate, the statutory minimum of $200, whichever is greater, pursuant to Florida Statutes § 772.104(1);

  b. Reasonable costs and attorneys' fees pursuant to Florida Statutes § 772.104(1); and,

  c. Any other relief this Court deems equitable and proper under the circumstances.

## COUNT II
### VIOLATIONS OF THE FCCPA, Florida Statutes § 559.72(9)

82. Ms. Robinson adopts and incorporates paragraphs 1 – 78 as if fully stated herein.

83. Jefferson violated **Florida Statutes § 559.72(9)**, when it attempted to collect the Total Loan from Ms. Robinson, as the Total Loan was an illegal and unenforceable debt due to its unlawful interest rate, in violation of Florida Statutes § 687.071, and Jefferson knew, or should have known, that the Total Loan was unenforceable in Florida.

84. Jefferson was in possession of the Total Account documents and has been sued in the past for similar conduct. Jefferson thus knew, or should have known, that it contained an illegal interest rate in Florida

**WHEREFORE,** Ms. Robinson respectfully requests this Honorable Court enter judgment against Jefferson, ordering:

   a. Statutory damages of **$1,000.00** pursuant to Section 559.77(2), Florida Statutes;

   b. Actual damages pursuant to Section 559.77(2), Florida Statutes;

   c. Reasonable costs and attorney's fees pursuant to pursuant to Section 559.77(2), Florida Statutes; and,

   d. Such other relief that this Court deems just and proper.

### COUNT III
### VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692e

85. Ms. Robinson adopts and incorporates paragraphs 1 – 78 as if fully stated herein.

86. Jefferson violated **15 U.S.C. § 1692e** when it used misleading and deceptive means to attempt to collect a debt from Ms. Robinson, by claiming a debt from an unlicensed, non-bank entity, Total, bearing a stated interest rate of 34.9% annually, with an effective interest rate exceeding 100% annually, was a legal, valid, and enforceable debt, when the extension of credit was null, void, and unenforceable under Florida law.

**WHEREFORE,** Ms. Robinson respectfully requests this Honorable Court enter judgment against Jefferson, ordering:

a. Statutory damages of **$1,000.00,** pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b. Actual damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d. Such other relief that this Court deems just and proper.

## COUNT IV
### VIOLATIONS OF THE FDCPA, 15 U.S.C. §§ 1692e(10)

87. Ms. Robinson adopts and incorporates paragraphs 1 – 78 as if fully stated herein.

88. Jefferson violated **15 U.S.C. § 1692e(10)** when it used misleading and deceptive means to attempt to collect a debt from Ms. Robinson, by claiming a debt from an unlicensed, non-bank entity, Total, bearing a stated interest rate of 34.9% annually, with an effective interest rate exceeding 100% annually, was a legal, valid, and enforceable debt, when the extension of credit was null, void, and unenforceable under Florida law.

**WHEREFORE,** Ms. Robinson respectfully requests this Honorable Court enter judgment against Jefferson, ordering:

a. Statutory damages of **$1,000.00,** pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b. Actual damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d. Such other relief that this Court deems just and proper.

## COUNT V
### VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692e(2)(a)

89. Ms. Robinson adopts and incorporates paragraphs 1 – 78 as if fully stated herein.

90. Jefferson violated **15 U.S.C. § 1692e(2)(a)** when it made a false representation about the character, amount and/or legal status of a debt by claiming a debt from an unlicensed, non-bank entity, Total, bearing a stated interest rate of 34.9% annually, with an effective interest rate exceeding 100% annually, was a legal, valid, and enforceable debt, when the extension of credit was null, void, and unenforceable under Florida law.

**WHEREFORE,** Ms. Robinson respectfully requests this Honorable Court enter judgment against Jefferson, ordering:

a. Statutory damages of **$1,000.00,** pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b. Actual damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d. Such other relief that this Court deems just and proper.

## COUNT VI
## VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692e(8)

91. Ms. Robinson adopts and incorporates paragraphs 1 – 78 as if fully stated herein.

92. Jefferson violated **15 U.S.C. § 1692e(8)** when it communicated credit information to a CRA which it knew or should have known to be false, by claiming a debt from an unlicensed, non-bank entity, Total, bearing a stated interest rate of 34.9% annually, with an effective interest rate exceeding 100% annually, was a legal, valid, and enforceable debt, when the extension of credit was null, void, and unenforceable under Florida law.

**WHEREFORE,** Ms. Robinson respectfully requests this Honorable Court enter judgment against Jefferson, ordering:

a. Statutory damages of **$1,000.00,** pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b. Actual damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

  c.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

  d.  Such other relief that this Court deems just and proper.

## COUNT VII
### VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692f(1)

93. Ms. Robinson adopts and incorporates paragraphs 1 – 78 as if fully stated herein.

94. Jefferson violated **15 U.S.C. § 1692f(1)** when it attempted to collect an amount not authorized by law, to wit, the entire alleged balance of the Total Loan, which was void *ab initio* pursuant to Florida Statutes § 687.071(7).

**WHEREFORE,** Ms. Robinson respectfully requests this Honorable Court enter judgment against Jefferson, ordering:

  a.  Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

  b.  Actual damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

  c.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

  d.  Such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Ms. Robinson hereby demands a trial by jury on all issues so triable.

Respectfully submitted on **June 23, 2022**, by:

<div style="text-align: right;">

**SERAPH LEGAL, P.A.**

/s/ *Brandon D. Morgan*
Brandon D. Morgan, Esq.
Florida Bar Number: 1015954
BMorgan@seraphlegal.com

/s/ *Thomas M. Bonan*
Thomas M. Bonan, Esq.
Florida Bar Number: 118103
TBonan@seraphlegal.com

1614 North 19th Street
Tampa, FL 33605
Tel: 813-567-1230
Fax: 855-500-0705
*Counsel for Plaintiff*

</div>

## ATTACHED EXHIBIT LIST

A    Total's Truth in Lending Disclosure
B    Ms. Robinson's Experian Consumer Disclosure, February 22, 2022, Total Tradeline - Excerpt
C    Jefferson's Collection Letter to Ms. Robinson, February 18, 2022, Excerpt

# EXHIBIT A
## Total's Truth in Lending Disclosure

**Terms and Conditions-Website**

| Interest Rates and Interest Charges | |
|---|---|
| Annual Percentage Rate (APR) for Purchases | **34.99%** |
| APR for Cash Advances | 34.99% |
| How to Avoid Paying Interest on Purchases | Your due date will be a minimum of 21 days after the close of each billing cycle. We will not charge interest on new purchases if you pay your entire balance by the due date each month. We will begin charging interest on cash advances on the post date. |
| Minimum Interest Charge | If you are charged interest, the charge will be no less than $1.00. |
| Credit Card Tips from the Consumer Financial Protection Bureau | To learn more about factors to consider when applying for or using a credit card, visit the website of the Consumer Financial Protection Bureau at http://www.consumerfinance.gov/learnmore. |

| Fees | |
|---|---|
| Set-Up and Maintenance Fees | Notice: The Annual Fee will be assessed before you begin using your card and will reduce the amount of credit you initially have available. Based on your initial credit limit of $300.00, your initial available credit will only be $225.00. |
| Program Fee | $95.00 (one-time fee). |
| Annual Fee | $75.00 for first year.<br>After that, $48.00 annually. |
| Monthly Servicing Fee | None for first year (introductory).<br>After that, $99.00 annually ($8.25 per month). |
| Transaction Fees | |
| Cash Advance Fee | None for first year (introductory).<br>After that, either $10.00 or 3% of the amount of each cash advance, whichever is greater. |
| Penalty Fees | |
| Late Payment Fee | Up to $40.00 |
| Returned Payment Fee | Up to $40.00 |

**How We Will Calculate Your Balance:** We use a method called "Average Daily Balance (including new purchases)."

**Right to Reject:** You may still reject this plan, provided you have not used the Credit Account or paid a fee after receiving a billing statement. If you do reject the plan, you are not responsible for any fees or charges, including any Program Fee(s) paid prior to receipt of your Account Opening Disclosures. Any such Program Fee(s) previously paid will be refunded upon rejection of the plan.

# EXHIBIT B
## Ms. Robinson's Experian Consumer Disclosure, February 22, 2022
## Total Tradeline - Excerpt

2/22/22, 11:00 AM                           Experian - Access your credit report

AMY ROBINSON | Report number ▮▮▮▮▮▮ | February 22 2022 | Print | Close window

### Print your report

Below is all the information currently in your credit report. The payment history guide and common questions will help explain your credit information. Print this page or write down your report number for future access.

### Address
Experian
P.O. Box 9701 Allen, TX 75013

| Account name | Account number | Recent balance | Date opened | Status |
|---|---|---|---|---|
| BK OF MISSOURI/TOTAL CARD | ▮▮▮▮▮▮ | Not reported | 03/2016 | Closed. $470 written off. |

2700 S LORRAINE PL
SIOUX FALLS, SD 57106
800 800 2143
Address identification number
0502180619

**Sold to**
JEFFERSON CAPITAL SYSTEMS LLC

**Type**
Credit card
**Terms**
NA

**Credit limit or original amount**
$300
**High balance**
$470
**Monthly payment**
$0
**Recent payment amount**
Not reported

**Date of status**
12/2018
**First reported**
03/2016
**Responsibility**
Individual

**Comment**
Purchased by another lender.

### Account history

| 2018 | | | | | | | | | | | | 2017 | | | | | | | | | | | | 2016 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Dec | Nov | Oct | Sep | Aug | Jul | Jun | May | Apr | Mar | Feb | Jan | Dec | Nov | Oct | Sep | Aug | Jul | Jun | May | Apr | Mar | Feb | Jan | Dec | Nov |

| Oct | Sep | Aug | Jul | Jun | May | Apr | Mar |
|---|---|---|---|---|---|---|---|
| OK | OK | OK | OK | OK | OK | OK | OK |

Charge Off as of Apr 2017
120 days past due as of Apr 2017
90 days past due as of Mar 2017
60 days past due as of Feb 2017
30 days past due as of Jan 2017

# EXHIBIT C

## Jefferson's Collection Letter to Ms. Robinson, February 18, 2022 - Excerpt

Jefferson CAPITAL

Current Creditor: JEFFERSON CAPITAL SYSTEMS LLC
Debt Description: FIRST ACCESS CARD
JCS Reference Number: [redacted]
Account Number: [redacted]

Amount of the Debt: $470.36

### Resolve Your Debt For Less Than Full Balance

February 18, 2022

Dear Amy Robinson,

Paying your outstanding balance can seem stressful. We have a payment offer that allows you to settle your FIRST ACCESS CARD account.

You can resolve this account with 3 monthly payments of $86.23 which represents approximately a 45% savings.

**How To Contact Us**

Self-Service — Interactive Voice Response (IVR) at 800-281-2793

Phone — Call 844-362-7361 (English and Español) Mon-Fri 8 AM - 4 PM Central Time

Mail — Mail payments to: DEPT #6419 PO BOX 11407, BIRMINGHAM, AL 35246-6419

Online — [redacted] Visit our website at www.myjcap.com

To determine your intent regarding this matter, please respond to this offer by contacting us before 03/24/2022. We are not obligated to renew this offer, however, if you would like additional time to respond to this option please contact us.

*Depending on your financial situation, we may be able to assist you in finding an alternate solution. Our staff is trained to assist you with a program that suits your needs.* You can speak to an associate at 844-362-7361.

*We will request the credit bureaus delete the Jefferson Capital, LLC tradeline approximately 30 days after the final payment has been posted that resolves the account as paid in full.*

*This information is not legal advice.* The law limits how long you can be sued on a debt. Because of the age of your debt, we (Jefferson Capital Systems, LLC) cannot sue you for it and we will not report it to any credit reporting agency. *In many circumstances,* you can renew the debt and start the time period for the filing of a lawsuit against you if you take specific actions such as making certain payment on the debt or making a written promise to pay. You should determine the effect of any actions you take with respect to this debt.

Sincerely,

*Jefferson Capital Systems, LLC*

Jefferson Capital Systems, LLC (JCS)

THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

